| | | |
|---|---|---|
| SYMARA A.C. YOUNG | * | |
| Plaintiff | * | DOCKET NO: 2:25-cv-02799 |
| | * | |
| | * | |
| *Versus* | * | JUDGE SHERYL LIPMAN |
| | * | |
| CITY OF MEMPHIS | * | |
| AND MARTERRION BRISCOE | * | MAGISTRATE ANNIE T. CHRISTOFF |
| Defendants | * | |

**MEMORANDUM IN OPPOSITION TO CITY OF MEMPHIS'S
MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) OF THE
FEDERAL RULES OF CIVIL PROCEDURE**

NOW COMES, Plaintiff, Symara A.C. Young, appearing herein through her undersigned counsel, who respectfully submits the following Memorandum in Opposition to the City of Memphis's Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, the Motion to Dismiss should be denied.

**STATEMENT OF CASE**

This matter arises from an automobile accident that occurred on or about May 6, 2023, following a high-speed police chase through the streets of the City of Memphis.

During the early morning hours of May 6, 2023, Plaintiff Symara A.C. Young, was out with a group of friends celebrating a recent birthday. The group met at a nightclub in Memphis. The group left the club in a gray Infiniti operated by Marterrion Briscoe. The Infiniti was initially spotted by two Memphis Police Officers, Defendants Marquavius Willams and Ontarian Malone, at a gas station located at 1243 Lamar Avenue. Defendants Williams and Malone were

partnered together that night, with Williams operating a marked police unit of the Memphis Police Department.

Even though there was no evidence that the Infiniti had been involved in a crime or that anyone inside the Infiniti, including Symara Young, had committed any crime or traffic violation, Defendants Williams and Malone began to pursue the Infiniti. The pursuit almost immediately escalated to a high-speed pursuit because Defendants Williams and Malone engaged in this pursuit in what is known as "black-out" mode with no headlights, or any other vehicular lighting including the emergency lights to signal that they were police offices. Defendants Willaims and Malone also failed to activate their body worn camaras (BWC) or the in-car video (ICV), and both failed to notify their supervisor that they were engaging in this pursuit.

The pursuit escalated because it was unclear why a vehicle was pursuing the Infiniti without any headlights. In her deposition, Ms. Young stated that there was a belief that someone may have been trying to attack and/or kill one of the other members in the Infiniti. Lasundra White, another passenger in the Infiniti, and Plaintiff in docket 2:25-cv-02800, stated she knew the police were following them but was scared because of the blacked-out condition.

Ms. Young, and Shonda R. White, the mother and next friend of Lasundra White, and Jasmine Kinds (a third passenger in the Infiniti who died in the collision) initiated suite in the Circuit Court for the Thirtieth Judicial District, Shelby County, Memphis, Tennessee. The initial lawsuits by each plaintiff were limited to claims pursuant to Tenn. Code Ann. Sec. 29-20-201, *et seq,* Tennessee's Government Tort Liability Act. There was also a general tort claim made against Matarrian Briscoe.[1]

---

[1] These cases were consolidated in state court, however, on removal, Defendant has unconsolidated the cases.

Defendant City of Memphis answered the lawsuit, and discovery began. During discovery, certain facts were uncovered. The "black-out" pursuit was confirmed through street cam video of the intersection of Park Street and Airways Boulevard.

The pursuit traveled east on Park Street. The Infiniti went through the intersection of Park and Airways and shortly thereafter, spun out of control, flipping and striking a building. During the collision, Ms. Young was thrown from the vehicle and suffered grievous injuries, including but not limited to the loss of her unborn child. The video produced in discovery showed Defendants Williams and Malone in pursuit with no lights on. At the moment the crash was taking place just ahead of them, Defendant Williams and Malone made an abrupt southbound turn on Airways Boulevard and departed the scene. The turn was taken at such a high rate of speed, Defendants Williams and Malone almost struck a northbound vehicle on Airways Boulevard.

Discovery also revealed that Defendants Williams and Malone were known to engage in high-speed, "black-out" pursuits, and had done so in the past. In a statement obtained by the Memphis Police Department, Defendant Malone admitted that he had engaged in "black-out" pursuits in the past, although denying it was routine. On December 20, 2022, both Defendants Williams and Malone had engaged in a high-speed pursuit of a person who was not considered a fleeing felon. Defendants were in different police units during this pursuit, however, neither activated the BWC or ICV, neither activated their emergency lights, nor any other lights, and neither notified their supervisor. On February 9, 2023, Defendant Malone engaged in another high-speed pursuit of a suspicious vehicle. Although the vehicle was deemed suspicious, Defendant Malone failed to activate his BWC and IVC and any emergency lighting in his police unit. Defendant Malone also failed to notify his supervisor of this pursuit.

While both Defendants Williams and Malone were cited for these gross violations of the law and Memphis Police Department rules and regulations, there was no corrective action taken. The charges were held in abeyance and eventually dispensed with once Defendants Williams and Malone resigned from the Memphis Police Department in 2024.

These high-speed pursuits are identical to the pursuit which gives rise to this incident. Despite these pursuits occurring within months of the pursuit giving rise to this cause of action, not only did the Memphis Police Department not take any action, but the Memphis Police Department also paired Defendants Williams and Malone together on the day of this incident. In other words, two officers known to the Memphis Police Department to have engaged in illegal pursuits in the recent past, were paired together on May 6, 2023.

These high-speed pursuits were not the only police chases where either Defendant Williams or Malone were cited by the Memphis Police Department. Both Defendants Malone and Williams had caused significant damage to other police units and private property following high-speed pursuits which were not within Memphis Police Department regulations, or the law. However, the pursuit of December 20, 2022, by Defendants Williams and Malone and the pursuit of February 9, 2023, by Defendant Malone, are shockingly similar to the incident before the Court.

Following the receipt of discovery, Ms. Young, and Ms. White, as mother and next friend of her minor daughters, moved for leave to amend their Complaints to add violations of 48 USC 1983 not only by Defendants Williams and Malone, but also the City of Memphis, because it failed to properly train and supervise Defendants Williams and Malone and because the City of Memphis had a custom of tolerance and acquiescence toward the actions of Defendants Williams and Malone.

The City of Memphis contends that both Ms. Young and Ms. White (plaintiff in docket 2:25-cv-02800) have failed to state a cause of action against it for civil rights violations. However, this is not the case.

**LAW AND ARGUMENT**

**I.     Rule 15 provides the remedy to address Defendant's Motion.**

Rule 15 of the Federal Rules of Civil Procedure provides for amendments to pleadings. Specific to Defendant's motion is Rule 15(a)(1), which states:

> Amendments Before Trial.
>
> (1) *Amending as a Matter of Course.* A party may amend its pleading once as a matter of course no later than
>
> > (A) 21 days after serving it, or
> >
> > (B) **if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b) , (e) , or (f) , whichever is earlier.**

Rule 15(a)(1)(B) was added to Rule 15 in 2009.  The advisory committee on the rules made the following notes with regards to the amendment:

> The distinction drawn in former Rule 15(a) is changed in two ways. First, the right to amend once as a matter of course terminates 21 days after service of a motion under Rule 12(b), (e), or (f). **This provision will force the pleader to consider carefully and promptly the wisdom of amending to meet the arguments in the motion. A responsive amendment may avoid the need to decide the motion or reduce the number of issues to be decided and will expedite determination of issues that otherwise might be raised seriatim.** It also should advance other pretrial proceedings.

Even though Ms. Young disagrees in principle with Defendants Rule 12(b) Motion, on September 11, 2025, thirteen days following service of the Motion, Ms. Young exercised her right under Rule 15 to file a Comprehensive Amended Complaint. (Doc. 12). setting forth with

specificity the previous acts committed by Defendants Willaims and Malone, and the Defendant, City of Memphis's failure to take any punitive or corrective action following those acts. Each disciplinary charge was held in abeyance for months leading to the accident at bar, and for several months thereafter.

The City of Memphis knew of the factual basis giving rise to the § 1983 claim made against it at the time the Motion was filed. The § 1983 claim did not originate in the initiating state court Complaint, instead, it came more than a year after the initial Complaint was filed, and Ms. Young had knowledge through discovery that the claim existed. Nonetheless, the Comprehensive Amended Complaint meets the goals of Rule 15, curing any issue raised by the Motion.

## II.    The Comprehensive Amended Complaint does state a claim against Defendant, City of Memphis.

Noteworthy in Defendant's Motion is the reliance on *New Albany Tractor, Inc. v. Louisville Tractor, Inc.,* 650 F.3rd 1046 (6th Cir. 2011), where the court, in applying *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), held that a party may not rely on discovery to obtain the facts necessary to allege its cause of action. See also *SEC v. Carroll,* 2011 U.S. Dist. Lexis 135730 (W.D. Ky. 11/23/2011). Applied to the matter at bar, if this case originated as a § 1983 action in Federal Court, Ms. Young would not be allowed to generally allege a violation, and then conduct discovery to develop the facts necessary to prove the claim.

This matter did not originate in that manner; instead it was converted to a § 1983 action following discovery revealing facts necessary to support that cause of action. Those facts were set forth in the Comprehensive Amended Complaint. Therefore, when specific acts are alleged

sustaining the cause of action, *New Albany Tractor,* is inapplicable. *Bedford Nissan, Inc., v. Nissan North Am., Inc.,* 2016 U.S. Dist. LEXIS 149762 (N.D. Oh. 10/28/2016).

In *City of Canton v. Harris*, 489 U.S. 378 (1989), the Supreme Court held that to hold a municipality liable for the constitution violations of its employees, it must be demonstrated that the municipality's failure tor train "evidences a deliberate indifference to the rights of its inhabitants." Only upon that showing, can the failure to train be considered a policy or custom which is forbidden by § 1983..

The Sixth Circuit has defined what constitutes a deliberate indifference establishing municipality liability. In In *Miller v. Calhoun County,* 408 F.3d 803 (6th Cir. 2005), the court stated:

> "Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 410, 137 L. Ed. 2d 626, 117 S. Ct. 1382 (1997). This in turn typically requires proof that the municipality was aware of prior unconstitutional actions by its employees and failed to take corrective measures.

In *St. John v. Hickey,* 411 F.3d 762 (6th Cir. 2005), the court further elaborated:

> To establish deliberate indifference, the plaintiff "must show prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury."

The case at bar involves a high-speed chase by Defendants Williams and Malone of a vehicle in which Ms. Young was a passenger. At the time the pursuit ensued, neither Defendants William nor Malone had any reason to believe that the vehicle was involved in the commission of a crime, or that the driver had violated any traffic laws. The pursuit was engaged in "black-out" mode, with Defendants Williams and Malone failing to activate the emergency lights and

the cars normal lights.  Both Defendants Williams and Malone failed to activate their BWC and ICV, and neither Defendants Williams nor Malone notified their supervisors of this pursuit.

The deliberate indifference of Defendant City of Memphis is demonstrated by the fact that within the six months of this high-speed pursuit, both Defendants Williams and Malone had engaged in the same activity, on one occasion working together.  They had both engaged in high-speed pursuits of vehicles characterized as "non-fleeing felons."  These pursuits were done without emergency lights, without BWC and ICV, and without notification to supervisory authority.  While both Defendants Williams and Malone had notations in their personal files, there was no further action taken.  Moreover, knowing Defendants Willaims and Malone were prone to engage in illegal and unconstitutional pursuits, the two were paired together on the night of the events at bar.

In *Brimingham v. Gonzales,* 1998 U.S. Dist. LEXIS 1778 (W.D. Mich. 1/22/1998), the district court for the Western District of Michigan faced a similar situation.  In that case, three people was killed following a high-speed pursuit of a fleeing felon.  The plaintiffs theory pertaining to the § 1983 action filed against the County and the County's Sheriff's Department focused on the lack of training for high-speed pursuits.  Specifically, it was discovered that sheriff's deputies were not trained in high-speed pursuits but rather took a precision driving course.  In denying the County and County Sherriff's Department's Motion for Summary Judgment, the court held:

> [P]laintiffs have introduced responses by Young in which he stated, "there is no high-speed pursuit training per se. There is a precision driving course that I have taken that was completed in March 1987." The amount of training Young stated he received from Defendants appears to be inadequate to the task of apprehending fleeing suspects. Since law enforcement is often engaged in high speed chases, this inadequacy can be said to be "so obvious" that failure to do so could properly be characterized as

"deliberate indifference" to constitutional rights This inadequacy may be "closely related to" or may have "actually caused" Plaintiffs' injury. Thus, Defendants' policies or instances of a failure to train may constitute deliberate indifference and create a genuine issue of material fact. Accordingly, Defendants' motion on the section 1983 claims is denied.

Noteworthy, in *Birmingham,* while the court concluded that gross negligence may apply, there was not, as there is in the case at bar, the repeated blatant failures to follow the most rudimentary practices; i.e. not operating in "black-out" mode, engaging BWN and ICV, supervisor notification.  Additionally, at bar, with these repeated instances there was not only inadequate training, but there was also no training whatsoever.  Both Defendants Williams and Malone were permitted to continue to patrol, and to patrol together.

In its motion, Defendant, City of Memphis states, "*[t]he Complaint contains no fact that could plausibly lead one to believe that the Defendants were aware of prior claims of unconstitutional conduct or that they deliberately ignored a history of abuse by the officers involved, or by any of the officers in the Memphis Police Department…Moreover, it does not allude to any past similar incidents.*"

The Comprehensive Amended Complaint renders this argument moot. The Comprehensive Amended Complaint specifically sets forth past similar acts of unconstitutional conduct and abuse by the officers involved.  Moreover, the Comprehensive Amended Complaint specifically states that the Memphis Polce Department was aware of those acts and took no disciplinary action whatsoever.

Based on the above, Defendant's Motion should be denied.

**III.    Plaintiff's claim under the GTLA is viable pursuant to Tenn. Code Ann. Sec. 29-20-202.**

Defendant seeks to have Ms. Young's claim pursuant to Tenn. Code Ann. Sec. 29-20-201, Tennessee's Government Tort Liability Act (GTLA) dismissed because the GTLA, and specifically Tenn. Code Ann. Sec. 29-20-205 exempts from the waiver of immunity claims for civil rights violations.[2]

Defendant is correct to the extent that Tenn. Code Ann. Sec. 29-20-205 removes immunity from suit of all governmental entities for injuries proximately caused by a negligent act or omission by any employee within the scope of his employment with the government entity. Defendant is further correct that Tenn. Code Ann. Sec. 29-20-205(2), exempts from that removal of immunity injuries arising out civil rights violations. Finally, Defendant is correct, that a GTLA claim cannot survive when a civil rights claim is re-packaged as a negligence claim. *Johnson v. City of Memphis,* 617 F.3d 864 (6th Cir. 2010). However, Defendant's analysis is not complete.

The Tennessee Supreme Court has long held that the GTLA is an act by the legislature that represents a departure from and a derogation of the common law. Therefore, the act must be strictly construed. *Limbaugh v. Coffee Med. Ctr.* 59 S.W. 3d 73 (Tenn. 2001). As such, the Supreme Court set forth the method for interpreting the GLTA:

> It is well-settled that the role of this Court in construing statutes is "to ascertain and give effect to" the legislative purpose and intent without unduly restricting or expanding a statute's coverage beyond its intended scope. "'The legislative intent and purpose are to be ascertained primarily from the natural and ordinary meaning of the statutory language, without a forced or subtle interpretation

---

[2] Noteworthy in this section of Defendant's motion is the admission that Ms. Young has properly alleged that Defendants Williams and Malone violated her civil right. Therefore, assuming those facts to be true, (as the Court must on a Motion to Dismiss), and if proven at trial, Defendants Williams and Malone would be in violation of 48 USC 1983. Further assuming the facts alleged in the Comprehensive Amended Complaint are true, Defendant City of Memphis, would be liable for their acts.

that would limit or extend the statute's application.'" Id. Courts are not authorized to alter or amend a statute, and must "'presume that the legislature says in a statute what it means and means in a statute what it says there. "If the words of a statute plainly mean one thing they cannot be given another meaning by judicial construction.". This last principle applies especially when analyzing the GTLA, as the legislature created this Act in derogation of the common law, and therefore, the Act must be strictly construed ***Internal citations omitted.*** *Id at* 83

In *Limbaugh*, the Supreme Court used the analysis set forth above to conclude that the so-called intentional tort exception to the removal of immunity found in Tenn. Code Ann. Sec. 29-20-205(2) did not include assault and battery. The Supreme Court found that had the legislature intended to exempt from the removal of immunity all intentional torts, it could have done so. However, it did not, Tenn. Code Ann. Sec. 29-20-205(2) specifically enumerating those torts exempted.

Included in the *Limbaugh* analysis is the Tennessee Supreme Court's pronouncements in *Hill v. City of Germantown,* 31 S.W.3d 2343 (Tenn. 2000). In distinguishing between immunity from damages—something not intended by the GTLA--and immunity from certain suits—which is intended by the GTLA—the Tennessee Supreme Court set forth the structure of the GTLA:

Each of the statutory provisions that operate to remove a governmental entity's immunity does so by removing "immunity from suit." See Tenn. Code Ann. § 29-20-202 (removing immunity from suit for negligent operation of motor vehicles); Tenn. Code Ann. § 29-20-203 (removing immunity from suit for injury from unsafe streets and highways); Tenn. Code Ann. § 29-20-204 (removing immunity from suit for injury from dangerous structures); Tenn. Code Ann. § 29-20-205 (removing immunity from suit for negligent acts of employees). Those statutes make no reference to "immunity from damages."

The GLTA removes sovereign immunity in four specifically defined statutory categories set forth in Tenn. Code Ann. Sec. 29-20-202 through Tenn. Code Ann. Sec. 29-20-205, as

recognized by the Tennessee Supreme Court. Tenn. Code Ann. Sec. 29-20-202 removes immunity specifically for:

> ***[I]njuries resulting from the negligent operation by any employee of a motor vehicle or other equipment while in the scope of employment***.

This case has always been one arising out of an automobile accident. Symara Young was a guest passenger in a vehicle that was pursued by Defendants Williams and Malone, while they were operating a motor vehicle in the scope of their employment. Therefore, Defendant's immunity from suit is removed pursuant to Tenn. Code Ann. Sec. 29-20-202.[3]

Notably absent from Tenn. Code Ann. Sec. 29-20-202 is the list of exceptions found in Tenn. Code Ann. Sec. 29-20-205. Further, notably absent from Tenn. Code Ann. Sec. 29-20-205, is any mention or extension of the exceptions to Tenn. Code Ann. Sec. 29-20-202. Certainly, had the legislature intended to create exception to the removal of immunity found in Tenn. Code Ann. Sec. 29-20-202, it could have done so. However, in *Limbaugh,* the Tennessee Supreme Court found that the judiciary could not extend the exceptions in Tenn. Code Ann. Sec. 29-20-205(2) to torts not enumerated. That same rationale prevents the extension of the civil rights exception to the removal of immunity found in Tenn. Code Ann. Sec. 29-20-202.

Defendant has cited to this Court numerous cases from the Sixth Circuit and this Court finding that the repackaged negligence claim could not overcome the civil rights exemption to the removal of immunity found in Tenn. Code Ann. Sec. 29-20-205, however, none of those cases involved the negligence operation of a vehicle by a governmental employee.

---

[3] Ms. Young recognizes the provisions of found in Tenn. Code Ann. Sec. 29-20-310, however, that has no applicability. The statutory removal of immunity found in Tenn. Code Ann. Sec. 29-20-205 is for everything not covered in the preceding statutes removing immunity. Only that statute is subject to the exceptions in 29-20-205(1-10). Therefore, before imposing liability on a government entity under Tenn. Code Ann. Sec. 29-20-205, it must first conclude that the exceptions do not apply.

The strict construction that must be employed to the GTLA, mandates that the civil rights exception to the removal of immunity in Tenn. Code Ann. Sec. 29-20-205, is not extended to automobile liability found in Tenn. Code Ann. Sec. 29-20-202. Therefore the Motion should be denied.

**CONCLUSION**

Plaintiff Symara A.C. Young timely and properly amended her Complaint to cure the alleged deficiencies set forth by Defendant regarding the allegations that she failed to state a claim against Defendant under 48 USC 1983. Ms. Young has evidence that Defendants Williams and Malone had committed similar acts in a very short time prior to the events of May 6, 2023. She has unconvertable evidence that the City of Memphis and the Memphis Police Department knew of these acts and knew that Defendants Williams and Malone had acted in concert previously. Despite this knowledge, Defendant allowed Defendants Willaims and Malone to patrol on May 6, 2023, as a partnered team.

For all the reasons set forth above, this represents a claim for failure to properly train and supervise, and which constituted a deliberate indifference to the safety of Ms. Young.

Ms. Young is entitled to pursue her 1983 action against the Defendants. She is also entitled to pursue her GTLA claim because immunity has been removed from Defendants under the GTLA.

*Signature page and certificate of service on next page.*

Respectfully Submitted:

**ALEXANDER SHUNNARAH
INJURY LAWYERS**


**_s./Matthew W. Pryor_**
Matthew W. Pryor (La. Bar Roll #23,903)
Licensed in Louisiana, Tennessee
Application Pending – Licensed to
Practice Pursuant to Tenn. Sup. Ct.
R. 7 Sec. 10.07
2000 Meridian Boulevard
Suite 225
Franklin, Tennessee 37067
Telephone (615)514-6710
Email: mpryor@asilpc.com

Affiliated Attorney
**_s./ James S. Sullivan_**
James S. Sullivan (BPR No. 036332)
2000 Meridian Boulevard Ste. 225
Franklin, Tennessee 37067
Telephone: (615)514-6712
Email: jsullivan@asilpc.com

**_Attorneys for plaintiff._**

## <u>CERTIFICATE</u>

I hereby certify that a copy of the above and foregoing was filed with the Court's cm/ecf program this 25th day of September, 2025 and service on all counsel of record was made therewith, and service was made on the following individuals through email or certified mail return receipt requested as set forth below:

Marterrion Brisco
3196 Southbridge Street
Memphis, TN 38118
**_Via Certified Mail_**

Marquavius Williams
7512 Burnstown Lane
Memphis, Tn 38133
**_Via Certified Mail_**

Ontarian Malon
5449 Riverstone Drive
Memphis, Tn 38125
**_Via Certified Mail_**

MILLER LAW FIRM
Henry W. Miller, III
(#016817)
Michael W. Miller   (#11612)
Henry W. Miller, IV  (#036533)
*Attorneys for Plaintiffs*
2400 Poplar Avenue, Suite 418
Memphis, TN 38112

901-327-3434    (Office)
***Via email to:***
mlfhenry@bellsouth.net
mlfmichael@bellsouth.net
mlfhenryjr@gmail.com

**_s./Matthew W. Pryor_**