IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| Symara A.C. Young, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:25-cv-02799-SHL-atc |
| ) | JURY DEMANDED |
| City of Memphis, Memphis Police Department, ) | |
| Ontarian Malone, Marquavius Williams, and ) | |
| Marterrion Brisco, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF THE CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPREHENSIVE AMENDED COMPLAINT**

Defendants City of Memphis and Memphis Police Department (the "City Defendants"), submit this Memorandum in Support of their Motion to Dismiss Plaintiff Symara A.C. Young's ("Plaintiff") Comprehensive Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted.

**I.    BACKGROUND**

Plaintiff's factual allegations and legal claims are set forth in the Comprehensive Amended Complaint (the "Complaint"). ECF No. 12.[1] Plaintiff alleges that on May 6, 2023, she was one of several passengers in a vehicle driven by Defendant Marterrion Brisco. Compl., ¶¶ 25–26. At approximately 2:53 a.m., two MPD officers, Defendants Ontarian Malone and Marquavius Williams (the "Defendant Officers"), allegedly engaged in a high-speed pursuit of the vehicle in which Plaintiff was a passenger. *Id.* ¶ 28. According to Plaintiff, the Defendant

---

[1] In the interest of brevity, the allegations in the Complaint will hereinafter be cited as "Compl., ¶ #".

1

4936-5670-2578

Officers were operating a marked MPD car when they initiated the high-speed chase despite having no evidence that the vehicle's passengers had been involved in a crime or violated any traffic laws. *Id.* ¶ 29. While engaging in the high-speed pursuit, the Defendant Officers allegedly struck the vehicle from behind causing it to crash. *Id.* ¶¶ 30–31. Plaintiff alleges she sustained personal injuries after she was ejected through the sunroof during the crash. *Id.* ¶ 33.

Plaintiff brought her initial Complaint in the present action on April 8, 2024, in the Circuit Court for Shelby County Tennessee. ECF No. 1-1, at PageID 5. Plaintiff's initial Complaint named Defendant Briscoe and the Memphis Police Department as defendants. ECF No. 1-1, at PageID 5. Pursuant to an order issued by the Shelby County Circuit Court (ECF No. 1-2, at PageID 10-11), Plaintiff filed her First Amended Complaint on July 11, 2025. ECF No. 1-3, at PageID 14. The City Defendants removed the action to this Court on August 8, 2025. ECF No. 1, at PageID 1. On September 11, 2025, Plaintiff filed the Comprehensive Amended Complaint. ECF No. 12.

Plaintiff asserts two principal causes of action against the City Defendants. First, Plaintiff claims that the City Defendants are vicariously liable for the negligence and negligence per se of the Defendant Officers. Plaintiff's vicarious liability claims are based on theories of "negligent entrustment, permissive user, master/servant, agency, . . . family purpose" and Tenn Code Ann. §§ 55-10-311, 55-10-312. Compl., ¶ 44.  Plaintiff also asserts her vicarious liability claim under the Tennessee Governmental Torts Liability Act (the "GTLA"), Tenn. Code Ann. § 29-20-101 *et seq*. *Id.* ¶ 109.  Second, Plaintiff asserts claims for civil rights violations against the City Defendants under 42 U.S.C. § 1983. *Id.* ¶¶ 86–107.

The Court should dismiss Plaintiff's Complaint against the City Defendants because (1) Plaintiff's negligence claims are barred by the GTLA; and (2) Plaintiff's Section 1983 claims

2

against the City Defendants are insufficiently pled and fails to state a claim upon which relief can be granted.

## II.     LAW AND ARGUMENT

### A.     Legal Standard for Motions to Dismiss.

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must take all well-pleaded allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.

Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed me accusation." *Iqbal*, 556 U.S. at 678. While a complaint need not present detailed factual allegations, to be cognizable it must provide more than "labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545. The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 555 (citing authorities). In other words, "claims set forth in a complaint must be plausible, rather than conceivable." *Id.* at 570.

A complaint must have a factual foundation, and the mere possibility "that a plaintiff might later establish some set of undisclosed facts to support recovery" is insufficient to survive a 12(b)(6) challenge. *Id.* at 561 (internal quotation marks omitted). If the plaintiff does not "nudge his claims across the line from conceivable to plausible, his complaint must be

3

dismissed." *Id.*

The *Twombly* plausibility standard consists of a "two-pronged approach." *Iqbal*, 556 U.S. at 679. Under the first prong, the Court identifies allegations that "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* The second prong requires that "when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

"In the context of [§] 1983 municipal liability, district courts in the Sixth Circuit Court of Appeals have interpreted *Iqbal*'s standards strictly." *See, e.g.*, *Epperson v. City of Humboldt, Tenn.*, 140 F. Supp. 3d 676, 685 (W. D. Tenn. 2015) (quoting *Hutchison v. Metro. Gov't of Nashville & Davidson Cty.*, 685 F. Supp. 2d 747, 751 (M.D. Tenn. 2010)).

**B.      Plaintiff's Negligence, and Negligence Per Se Claims Against the City Defendants are Barred by the GTLA.**

Plaintiff's negligence and negligence per se claims against the City Defendants are barred by the GTLA. "State law claims against governmental entities and their employees are governed [exclusively] by the GTLA." *Epperson*, 140 F. Supp. 3d at 689 (citing Tenn. Code Ann. § 29-20-101). The GTLA waives common law sovereign immunity and permits litigants to sue municipalities for injuries sounding in negligence. *Partee v. City of Memphis*, 449 F. App'x 444, 447 (6th Cir. 2011) (citing Tenn. Code Ann. § 29–20–205). However, "statutes which waive immunity of the governmental entity from suit are to be construed strictly in favor of the sovereign." *Siler v. Scott*, 591 S.W.3d 84, 104 (Tenn. Ct. App. 2019) (quoting *Hughes v. Metro. Gov't of Nashville & Davidson Cty.*, 340 S.W.3d 352, 368–69 (Tenn. 2011)). All claims for damages brought under the GTLA must strictly comply with the GTLA. *Limbaugh v. Coffee Medical Ctr.*, 59 S.W.3d 73, 82 (Tenn. 2001).

The GTLA contains a list of specific exceptions for which municipalities, such as the

4

City Defendants, retain immunity. *See* Tenn. Code Ann. § 29-20 205(1)- (10). One is the "civil rights exception," which bars claims for injuries arising out of claims for civil rights violations. Tenn. Code Ann. § 29-20-205(2). A claim falls within this "civil rights exception" when it "arises out of the same circumstances giving rise to [the] civil rights claim under § 1983." *Johnson v. City of Memphis*, 617 F.3d 864, 872 (6th Cir. 2010).

In the Complaint, Plaintiff's negligence and negligence per se claims are based on the same alleged events, actions, or omissions as Plaintiff's Section 1983 claim. Both claims are based on the alleged police chase and subsequent crash that occurred on May 6, 2023. Compl., ¶¶ 24–34. Specifically, Plaintiff's allegations that the Defendant Officers engaged in a high-speed chase of the vehicle without probable cause or evidence of a crime and striking the rear of the vehicle during the chase form the basis for Plaintiff's tort and Section 1983 claims. Compl., ¶¶ 46 (describing the alleged negligent acts of the Defendant Officers), 62 (describing the allegations forming the basis for Plaintiff's Section 1983 claim).

Although Plaintiff's Section 1983 claim includes allegations of a failure to train and supervise, the underlying facts regarding the Defendant Officers' unreasonable actions in engaging in a high-speed chase serve as the basis for Plaintiff's tort and Section 1983 claims. Plaintiff does not allege any additional facts against the City Defendants that constitute a tort that is not also included in her Section 1983 claims. (*Id.* ¶¶ 19–20.) Thus, Plaintiff's tort claims "arise out of" civil rights allegations within the meaning of the GTLA. *See* Tenn. Code Ann. § 29-20-205(2). Because Plaintiff's tort claims against the City Defendants arise out of the same allegations underlying her Section 1983 claim, those claims fall within the civil rights exception of the GTLA. *Johnson*, 617 F.3d at 872. The City Defendants, therefore, retain their immunity and are not vicariously liable for the alleged negligence of the Defendant Officers.

5

### C. Plaintiff Fails to Plead Sufficient Facts Under *Monell* to Sustain the § 1983 Claim Against the City.

Plaintiff's Section 1983 claim against the City Defendants should be dismissed because Plaintiff fails to plead sufficient facts to sustain this claim. In *Monell v, Department of Social Services of City of New York*, the Supreme Court found that "[l]ocal governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. 658, 690, (1978). To prevail on a claim against a municipality under §1983, a plaintiff must establish both: (1) the deprivation of a constitutional right; and (2) the municipality's responsibility for that violation. *Doe v. Claiborne Cnty., Tenn. By and Through Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495, 505–506 (6th Cir. 1996).

Under *Monell*, a municipal entity like the City, "may only be sued under § 1983 for unconstitutional or illegal municipal policies, and not for unconstitutional conduct of [its] employees." *Ctr. for Bio–Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 819 (6th Cir. 2007) (quoting *Monell*, 436 U.S. at 691). Municipal liability under § 1983 arises "when execution of a government's policy or custom . . . inflicts the injury of a constitutional violation." *David v. City of Bellevue, Ohio*, 706 F. App'x 847, 850 (6th Cir. 2017) (quoting *Monell,* 436 U.S. at 694). "[T]he touchstone of 'official policy' is designed '*to distinguish acts of the municipality from acts of employees of the municipality*, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479–480 (1986)) (emphasis in original).

6

The Sixth Circuit recognizes four avenues by which a plaintiff can prove the existence of a municipality's illegal policy or custom: "1) the municipality's legislative enactments or official agency policies; 2) actions taken by officials with final decision-making authority; 3) a policy of inadequate training or supervision; or 4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citations omitted).

Here, Plaintiff asserts Section 1983 claims against the City Defendants under the theories of "a policy of inadequate training or supervision" and "a custom of tolerance or acquiescence of federal rights violations." Compl., ¶¶ 90–92. Plaintiff fails to assert sufficient facts to support a *Monell* claim under either theory.

        1.    <u>Plaintiff fails to sufficiently plead a failure to train or failure to supervise claim.</u>

Plaintiff fails to sufficiently plead that MPD's training and supervision were inadequate. In fact, Plaintiff fails to make any specific allegations regarding the MPD's training program at all, other than baldly concluding that the City Defendants "failed to provide training and supervision for a known and foreseeable occurrence of initiating and engaging in high-speed vehicle pursuits." *See, e.g., id.* ¶ 90. It is well settled that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). The legal standards for a claim of inadequate supervision and one of inadequate training are essentially the same. *Okolo v. Metro. Gov. of Nashville*, 892 F. Supp. 2d 931, 943 (M.D. Tenn. 2012). To establish municipal liability for failure to train, a plaintiff must show "'(1) the training program was inadequate to the task the officer must perform, (2) the inadequacy is a result of the municipality's deliberate indifference, and (3) the inadequacy is closely related to or actually caused the plaintiff's injury.'" *Epperson*, 140 F.

7

Supp. 3d at 684 (citation and quotations omitted). "Deliberate indifference requires a showing of 'prior instances of unconstitutional conduct demonstrating that the municipality has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.'" *Id.* (quoting *Bonner–Turner v. City of Ecorse*, 627 Fed. Appx. 400, 414, 2015 WL 5332465, at *13 (6th Cir. 2015).

Here, Plaintiff, without providing any specific details, repeatedly concludes that City Defendants failed to train and/or supervise MPD officers regarding the use of force in high-speed vehicle pursuits. Compl., ¶¶ 62, 90, 94, 96, 100. Yet, Plaintiff never provides any allegations detailing MPD's deficient training program or methods at all—much less with respect to its training related to vehicle pursuits.

A case from this Court is instructive. In *Boddy v. City of Memphis, Tennessee*, the Sixth Circuit rejected similar conclusory allegations. No. 22-5259, 2022 WL 12258977, at *3 (6th Cir. 2022). There, the Court described the complaint as "filled with conclusory assertions that the City does not train or supervise its police officers and sanctions a wide variety of illegal police practices, ranging from the use of excessive force to the failure to discharge officers who have repeatedly used excessive force." *Id.* The court concluded that the complaint was "bereft, however, of any factual allegations that could *plausibly* support these sweeping assertions. [Plaintiff] does not allege a single fact related to the training the City provides its police officers[.]" *Id.*; *see also Sweat v. Butler*, 90 F. Supp. 3d 773, 782–83 (W.D. Tenn. 2015) (granting motion to dismiss on failure to train allegations where the plaintiff focused on the officer's prior work history, alleged misconduct, and a failure to discipline given that "the allegations [did] not make a failure to train claim plausible because none of them concern[ed] training practices or a lack thereof.").

8

Moreover, Plaintiff fails to plausibly plead that the allegedly deficient training and/or supervision of MPD was a result of the City's deliberate indifference to unconstitutional conduct. *See, e.g.*, *Epperson*, 140 F. Supp. 3d at 684. "Deliberate indifference requires a showing of 'prior instances of unconstitutional conduct demonstrating that the municipality has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.'" *Id.* (quoting *Bonner–Turner v. City of Ecorse*, 627 Fed. Appx. 400, 414, 2015 WL 5332465, at *13 (6th Cir. 2015). Deliberate indifference has been characterized as a "stringent" standard of fault, "requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Regets v. City of Plymouth,* 568 Fed. Appx. 380, 394 (6th Cir.2014) (quoting *Bd. of Cty. Comm'rs v. Brown,* 520 U.S. 397, 410, 117 S. Ct. 1382, 137 L.Ed.2d 626 (1997)). "A showing of simple or even heightened negligence will not suffice." *Baynes v. Cleland,* 799 F.3d 600, 620 (6th Cir.2015) (quoting *Brown,* 520 U.S. at 407, 117 S. Ct. 1382), *reh'g en banc denied* (Oct. 1, 2015).

Here, while Plaintiff pleads two other instances where the Defendant Officers allegedly engaged in high-speed vehicle pursuits similar to the one giving rise to this lawsuit, Plaintiff fails to plead **when the City was put on notice** of those pursuits. For example, in Paragraph 35, Plaintiff explains that on May 16, 2023, Defendant Officer Williams admitted that he engaged in other similar pursuits, but that admission was allegedly made one week ***after*** the incident giving rise to the lawsuit. Compl., ¶ 35(a).

Plaintiff also alleges that on December 20, 2022 Defendant Officers were involved in a high-speed pursuit of a vehicle where they did not engage the vehicle's lights—but Plaintiff does not plead that the City was on notice of this prior to the incident giving rise to the lawsuit. *Id.* ¶ 35(b).

9

Similarly, Plaintiff alleges that on February 9, 2023, Defendant Officer Malone engaged in a high-speed vehicle pursuit without activating emergency lights and without notification to his supervisor, but again, Plaintiff does not plead when—or if—the City was on notice of this alleged pursuit prior to the incident giving rise to the lawsuit. *Id.* ¶ 35(e).

Because Plaintiff does not plead that the City was on notice of these prior instances of unconstitutional conduct related to high-speed vehicle pursuits before the incident giving rise to the lawsuit, she has not demonstrated that the City has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury. *See Epperson*, 140 F. Supp. 3d at 684.

For these reasons, Plaintiff's failure to train and failure to supervise claims must be dismissed.

      2.    <u>Plaintiff Fails to State a Claim of Inadequate Training or Supervision Under a "Single Violation" Theory.</u>

Plaintiff attempts to make up for the lack of detailed allegations regarding inadequate training by asserting a "single violation" theory under Section 1983. Compl., ¶¶ 101-107. Specifically, Plaintiff claims, "A City may be held liable for its failure to train a single officer when the policymakers know about the pattern of unconstitutional misconduct and the officers' acts were so egregious that the Defendant City should have had clear warning that the specific officers posed a danger to citizens." *Id.* ¶ 102 (citing *Pineda v. County of Houston*, 124 F. Supp. 2d 1057, 1068 (S.D. Tex. 2000)). Plaintiff mischaracterizes the standard for the "single violation" theory, and more importantly, fails to properly allege sufficient facts to meet the correct standard.

When there is no pattern of similar constitutional violations among a police department to support a Section 1983 claim, a plaintiff can, in rare circumstances, establish liability against a

10

municipality under a single violation theory. *Pheap v. City of Knoxville*, 687 F. Supp. 3d 807, 817 (E.D. Tenn. 2023). "To succeed under a single violation theory, however, Plaintiff must demonstrate that the City 'failed to train its employees to handle recurring situations presenting an obvious potential for such a violation[.]'" *Id.* (quoting *Harvey v. Campbell Cnty.*, 453 F. App'x 557, 563 (6th Cir. 2011)). This requires a showing of "a complete failure to train the police force, or training that is so reckless or grossly negligent that future police misconduct is almost inevitable . . . or would be properly characterized as substantially certain to result[.]" *Id.* (quoting *Hays v. Jefferson Cnty.*, 668 F.2d 869, 874 (6th Cir. 1982) (alterations in original).

Plaintiff incorrectly states that liability under Section 1983 can be established for "failure to train a single officer." Compl., ¶ 102. Not so. Sixth Circuit law is clear: "Allegations that a particular officer was improperly trained are insufficient to prove liability, as are claims that a particular injury could have been avoided with better training." *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998).

The Southern District of Texas case cited by Plaintiff, *Pineda v. City of Houston*, further affirms this principle. In that case, the court held that the plaintiff failed to present sufficient evidence at summary judgment to establish that the police officers were placed in recurring situations requiring specialized training. 124 F. Supp. 2d 1057, 1085–86 (S.D. Tex. 2000) ("The single incident exception requires proof that officers are placed in recurring situations that present an obvious potential for violation of constitutional rights and the need for additional or different police training." (internal quotation removed)).

Even so, Plaintiff fails to allege sufficient facts to support a claim under the single violation theory. Plaintiff points to two prior vehicle incidents involving the Defendant Officers as the basis of her single violation claim. Compl., ¶¶ 103, 35. Even under a single violation

11

theory, allegations that one or two individual officers are inadequately trained cannot support a Section 1983 claim. *Sova*, 142 F.3d at 904; *Pheap*, 687 F. Supp. 3d at 817. Plaintiff does not allege a complete failure to train or training that is so reckless or grossly negligent that future police misconduct is almost inevitable. *See Pheap*, 687 F. Supp. 3d at 817. Accordingly, Plaintiff's claim for inadequate training under a single violation theory fails.

        3.    <u>Plaintiff fails to state a claim for a custom of tolerance of unlawful conduct under *Monell*.</u>

Plaintiff fails to show how the City Defendants maintained a custom of permitting the constitutional violations alleged in the Complaint. Plaintiff alleges that the City Defendants' "formal and informal acts actions reflect a policy, practice, custom, and procedure authorizing and allowing constitutional rights violations." Compl., ¶ 92. "[A] custom-of-tolerance claim requires a showing that there was a pattern of inadequately investigating similar claims." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). A "custom" for purposes of *Monell* liability must "be so permanent and well settled as to constitute a custom or usage with the force of law." *Monell*, 436 U.S. at 691 (internal quotation marks and citation omitted); *see also Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993), *cert. denied*, 510 U.S. 826 (1993). In turn, the notion of "law" must include "[d]eeply embedded traditional ways of carrying out state policy." *Nashville, Chattanooga & St. Louis Ry. Co. v. Browning*, 310 U.S. 362, 369 (1940). It must reflect a course of action deliberately chosen from among various alternatives. *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985). In short, a "custom" is a "legal institution" not memorialized by written law. *Feliciano*, 988 F.2d at 655.

Moreover, where a plaintiff asserts a claim of a custom of tolerance toward constitutional violations, that is, a custom of inaction, she must make a showing of "(1) a clear and persistent pattern of misconduct, (2) notice or constructive notice on the part of the municipality, (3) the

12

defendant's tacit approval of the misconduct, and (4) a direct causal link to the violations." *Nouri v. Cty. of Oakland*, 615 Fed.Appx. 291, 296 (6th Cir.2015) (internal quotation marks omitted); *see also Burgess*, 735 F.3d at 478 ("a custom-of-tolerance claim requires a showing that there was a pattern of inadequately investigating similar claims"). Like a claim based on failure to train employees, one grounded in a custom of tolerance requires a showing of deliberate indifference. *Key v. Shelby Cty.*, 551 Fed. Appx. 262, 267 (6th Cir.2014); *D'Ambrosio*, 747 F.3d at 387–88.

Plaintiff's claim of a custom of tolerance fails because Plaintiff did not plead facts to support that the City was deliberately indifferent to a pattern of constitutional violations. At most, Plaintiff alleges that the City Defendants failed "to take any corrective action regarding high-speed, 'black-out' pursuits of February 9, 2023 (in which Defendant Officer Malone engaged) and December 20, 2022 (in which both Defendant Officers Williams and Malone engaged)." Compl., ¶ 95(B).[2] Moreover, there is a notable lack of detail regarding the action the MPD took with respect to these two prior incidents, particularly when—or even if—the City was on notice of these pursuits. *See id.* ¶ 98.

A custom of tolerance claim does not mean that the officers had a "custom" of behaving in a certain way. It requires a showing that "that there was a pattern of inadequately investigating similar claims." *Burgess*, 735 F.3d at 478. Plaintiff here merely alleges that the City Defendants did not discipline the Defendant Officers in this case for two prior vehicle incidents. Compl., ¶ 95(B). Plaintiff fails to allege a clear and persistent pattern of inadequately investigating similar misconduct within the MPD as a whole. *See id*. ¶ 95 (stating the basis for Plaintiff's unlawful

---

[2] Besides a couple of other unrelated traffic incidents involving the Defendant Officers, the Complaint contains no further allegations of other MPD Officers engaging in similar conduct. *Id.* ¶ 95.

13

custom claim.) Plaintiff did not, and cannot, plead sufficient facts illustrating a "tacit approval of unconstitutional conduct" such that the City Defendants' alleged failure to act can be said to amount to an official policy of inaction.

As the Supreme Court makes clear in *Monell*, the City's liability cannot be based on employing tortfeasors. *Monell*, 436 U.S. at 690. Instead, liability must be based on the City's direct actions. Plaintiff's allegations are insufficient to show a ***permanent and widespread custom of tolerance*** or a ***pattern of inadequate investigating*** similar claims. Accordingly, Plaintiff failed to sufficiently plead facts to support a claim for custom of tolerance and Plaintiff's civil rights claims against the City Defendants must be dismissed.

In short, Plaintiff's allegations fall far short of an "embedded tradition" or "legal institution" required to establish an unlawful custom of tolerance under *Monell*. *Browning*, 310 U.S. at 369; *Feliciano*, 988 F.2d at 655.

### IV.    CONCLUSION

For these reasons, the City Defendants respectfully request this Court to grant their Motion and dismiss Plaintiff's Comprehensive Amended Complaint with prejudice

Dated: October 16, 2025

Respectfully submitted,

**BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, P.C.**

*s/ Bruce McMullen*
Bruce McMullen (#18126)
Jennie Vee Silk (#35319)
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone (901) 526-2000
E-mail: bmcmullen@bakerdonelson.com
E-mail:  jsilk@bakerdonelson.com
*Attorneys for Defendant City of Memphis*

14

## **CERTIFICATE OF SERVICE**

      I hereby certify that on October 16, 2025, a copy of the foregoing was served upon Plaintiff via the Court's e-filing system and via email.

                                            *s/ Bruce McMullen*
                                            Bruce A. McMullen

4936-5670-2578