IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| SYMARA A.C. YOUNG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| CITY OF MEMPHIS, MEMPHIS POLICE ) | |
| DEPARTMENT, ONTARIAN MALONE, ) | |
| MARQUAVIUS WILLIAMS, and ) | |
| MARTERRION BRISCO, ) | |
| ) | No. 2:25-cv-2799-SHL-atc |
| Defendants. ) | No. 2:25-cv-2800-SHL-atc |
| ) | JURY DEMANDED |
| ) | |
| SHONDA R. WHITE, INDIVIDUALLY ) | |
| AND AS MOTHER AND NEXT FRIEND ) | |
| OF LASUNDRA JOSEPHINE WHITE, A ) | |
| MINOR and JASMINE KINDS, ) | |
| DECEASED MINOR, ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| v. ) | |
| ) | |
| CITY OF MEMPHIS, TENNESSEE, ) | |
| MEMPHIS POLICE DEPARTMENT, ) | |
| ONTARIAN MALONE, MARQUAVIUS ) | |
| WILLIAMS, MARTERRION BRISCO, and ) | |
| XAVIER HUNT, ) | |
| ) | |
| Defendants. ) | |

**CITY OF MEMPHIS'S RESPONSE TO PLAINTIFF'S NOTICE OF INADVERTENT
RECORDING OF JANUARY 12, 2026 HEARING**

The City of Memphis (the "City") hereby files this Response to Plaintiff's Notice of

Inadvertent Recording for January 12 Hearing (the "Notice") (ECF No. 69.)

1

Plaintiff's Notice confirms what counsel for the City has long suspected: Plaintiff White's counsel, attorneys from Romanucci & Blandin, LLC and from Mendelson Law Firm (collectively referred to as, "Plaintiff's attorneys" or "Plaintiff's counsel") have been using an AI tool to transcribe and record meet-and-confers, depositions, and now, they used AI to record a court hearing. This conduct has occurred in the instant matter and in the *Wells v. City of Memphis* litigation, Case No. 2:23-cv-02224 (W.D. Tenn.).

In the Notice, Plaintiff's counsel claims that this was an innocent, inadvertent mistake, but that is simply contrary to logic. (ECF No. 69.) All three attorneys for the City received the Read AI email with the recap of the January 12 status conference at 11:43 am. (*See* Exhibit A, Read AI Email received by Mr. McMullen.) Plaintiff's counsel did not acknowledge the AI recording until the City's counsel confronted Plaintiff's counsel in an email sent yesterday, January 12, 2026 at 4:58 pm. (Exhibit B, January 12, 2025 Email "Concerns Regarding Improper Recording".) Clearly, Plaintiff's counsel knew about the recording hours before when the initial Read AI email was sent, but they did not realize that Read AI sent the notification to all participants from the hearing. It is the City's understanding that Read AI permits a user to choose to whom these notifications are sent, and in this instance, Plaintiff's attorney simply failed to exclude all participants. Consequently, Plaintiff's counsel's ongoing practice of secretly recording meet and confers, depositions, and court hearings has been confirmed.

**I.     Plaintiff's Counsel Has Recorded Meetings Between Counsel in the *Wells v. City of Memphis* Case.**

For at least a year, the City has suspected—and Plaintiff's counsel has acknowledged—that Plaintiff's counsel has recorded the discovery meet and confers between Plaintiff's counsel and City's counsel in the *Wells v. City of Memphis* litigation. To be clear, the City has repeatedly objected to the recording of the meet and confers.

On April 7, 2025, Plaintiff's attorney Stephen Weil admitted that Plaintiff's counsel had recorded a previous meet and confer. (Exhibit C, April 7, 2025 Email "RE: Subpoena and Notice of Deposition for Rodney Wells - Wells v. City of Memphis, et al., Case No. 2:23-cv-02224" ("We recorded you saying essentially the same thing on our 4/4 call, an in my 4/5 email I said that you were uncertain whether complaints that get off the ground are connected with officer IBM numbers. Now you say I'm mischaracterizing something—but what is it?") (emphasis added)).

After the City's counsel confronted Mr. Weil about his recording—which he denied—and advised that recording without both parties' consent is illegal in Illinois,[1] however, the City began to pay close attention to the fact that Plaintiff would often quickly circulate transcription-level notes after the meet and confers, when it was clear from the video conferences that no one from Plaintiff's counsel team was taking such detailed notes. For example, on August 15, 2025, the parties met via videoconference at 1:00 pm. The only attorney on the call representing Plaintiff was Josh Levin. During the meeting, Mr. Levin was engaged in the discussion, not taking detailed notes. However, just a few hours later, Mr. Levin sent an incredibly thorough recap of the meeting—even more thorough than the City's dedicated notetakers present on the call. (Exhibit D, August 15, 2025 Email "Wells v. City of Memphis et al. - August 15, 2025 Meet and Confer".)

In October 2025, having grave concerns about Plaintiff's use of AI to secretly record and/or transcribe these meetings, the City's counsel raised the issue of whether Plaintiff's counsel was using an AI tool to record and transcribe the meet and confers. Plaintiff's counsel

---

[1] The Romanucci & Blandin firm is located in Chicago, Illinois. Upon information and belief, these attorneys for Plaintiff have participated in all relevant videoconferences while located in Illinois.

3

vehemently denied using an AI tool to record and transcribe the meetings. The City has since raised this issue with Plaintiff's counsel at the beginning of every meet and confer since October 2025—expressly noting the City's objection to any recording—and Plaintiff's counsel has denied using any recording or transcription tools every time.

The City has also reminded Plaintiff's counsel that because they do not have permission to record conversations with City's counsel, doing so would violate Illinois law. This is so because Illinois, unlike Tennessee, is a two-party consent state, meaning all parties must consent to the recording of a conversation. 720 Ill. Comp. Stat. Ann. 5/14-2. Moreover, recording meetings between attorneys without both parties' consent is widely understood to run afoul of the Tennessee Rules of Professional Conduct, as it is considered an effort to "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Tenn. Rules of Prof'l Conduct 8.4(c).

After the City raised the issue of the illegality of Plaintiff's counsel's recording under Illinois law, Mr. Mendelson, a Tennessee lawyer, started to attend **every** meet and confer and **every** Zoom or Teams meeting, deposition, and hearing. In one virtual meeting, the City again raised the objection to the Plaintiff's use of an AI tool to record the meeting, and Mr. Mendelson laughed and stated that Tennessee is a one-party state. While the City does not know why, after minimal participation for almost three years, Mr. Mendelson decided to suddenly participate in all videoconferences in the case, query whether he was dispatched to "record" from the state of Tennessee, in an attempt not to run afoul of Illinois law. Even still, it cannot be emphasized enough that recording meetings between attorneys without both parties' consent is contrary to the Tennessee Rules of Professional Conduct.

4

II.  **Plaintiff's Counsel Attempted to Record a Deposition in the *Wells v. City of Memphis* Case using Read AI.**

The City's suspicions about Plaintiff's counsel's use of an AI tool were unequivocally confirmed on December 18, 2025, during the deposition of Col. Eddie Bass (Ret.), which was noticed by Plaintiff and took place on Zoom. At the outset of the deposition, a Zoom participant appeared in the deposition named "Read AI." In the chat, Zoom notified the participants that "David" had added Read AI to the meeting. Plaintiff's attorney David Mendelson was present on Zoom, and he was the only participant named "David." Counsel for the City demanded whoever was using Read AI to exit the Zoom. The user named Read AI would not exit. Eventually, the videographer, who was the host of the Zoom, had to manually remove Read AI from the virtual deposition. Counsel for the City confronted Mr. Mendelson about the chat notification that it was "David" who added Read AI to the Zoom, and Mr. Mendelson denied having any knowledge of Read AI.

This is important because Mr. Mendelson has once again used Read AI, but this time he has denied knowing anything about Read AI. That is demonstrably false. Incredibly, Plaintiff's Notice does not mention the circumstances of the Zoom deposition of Col. Bass where Mr. Mendelson attempted to use Read AI to record and transcribe the depositions. Plaintiff's Notice also alleges that Read AI is a feature of Microsoft Teams, but Read AI was deployed by "David" ***on Zoom—not Teams***—during the Col. Bass deposition. Nevertheless, at a minimum, Mr. Mendelson was on notice of this issue no later than December 18, 2025.

III.  **Plaintiff's Counsel Recorded the January 12, 2026 Status Conference in the *Young* and *White* Consolidated Case Using Read AI.**

On January 12, 2025, Plaintiff's counsel once again deployed its AI tool, and once again denied knowing anything about it. (*See* ECF No. 69, at ¶¶ 1, 2.) The City learned of Plaintiff's counsel's use of AI when the City's attorneys received an email from "David Mendelson via

5

Read AI," which included a preview of the "Meeting Report" of the status conference in *Young* and *White* that was generated by an AI tool used by David Mendelson called Read AI. (*See* Exhibit A.) Specifically, the email states: "You've been invited to view this report because David Mendelson added Read to the meeting and wanted to share the recap with you." (Exhibit A.)

Following receipt of this email, the City emailed the parties in this case and in the *Wells* litigation notifying counsel of its receipt of Mr. Mendelson's improper AI "Meeting Report" and asking for an explanation. Shortly after, Mr. Mendelson offered to speak to counsel for City. That call occurred on January 12 around 5:30 pm. During that call, Mr. Mendelson again denied knowing anything about Read AI. The City's counsel confronted him with the presence of Read AI before the Col. Bass deposition, and again he denied knowing anything about it. But that is not true, and Plaintiff's Notice confirms this.

In Plaintiff's Notice, Mr. Mendelson does not deny knowing anything about Read AI. Instead, he alleges that "***he did not know that the Read AI feature was activated during the hearing[.]***" (ECF No. 69, ¶ 1.) Mr. Mendelson further claims in the Notice that he understands that Read AI is "an artificial intelligence (AI) feature of Microsoft Teams . . . and that he did not intentionally activate it." (*Id.* at PageID 477.) These statements are in direct contravention to the conversation he had with the City's counsel just hours before during which Mr. Mendelson claimed ***total ignorance*** about Read AI.

In short, Plaintiff's Notice is misleading at best, and, at worst, demonstrably false.

**IV.     Plaintiff's Counsel Intentionally Did Not Disclose That Read AI Had Recorded the Status Conference.**

If City's counsel had not received Mr. Mendelson's Read AI "Meeting Report" (which obviously was sent to all participants in the January 12 hearing by mistake), and if City's counsel had not confronted Plaintiff's counsel with their error, Plaintiff's counsel would never have

6

disclosed this secret recording to the Court. All Plaintiff's attorneys received the "Meeting Report" just as the City's counsel did. However, this did not raise any concern for Plaintiff's counsel—and certainly did not provoke immediate action—because receiving these "Meeting Reports" are normal course for Plaintiff's counsel. This time, however, they did not realize that Mr. Mendelson had not opted out of sending the notification to <u>all participants</u> from the virtual status conference. This is supported by the fact that not one of Plaintiff's attorneys acknowledged receipt of, or raised concerns about, the "Meeting Report" that clearly indicates a ***court proceeding*** was recorded via an AI tool.

## V. Plaintiff's Counsel's Conduct Raises Serious Legal and Ethical Concerns.

There are multiple problems with Plaintiff's counsel's secret use of an AI tool to record conversations, meet and confers, depositions, and court proceedings. The use of Read AI to record a proceeding in this Court a violation of Local Rule 83.2(a)(1), which states:

> The taking of photographs or the recording of transmission of Court proceedings, whether in person or conducted virtually through an online platform, or the airing of radio, television or internet broadcasts by non-Court personnel from the floors of the Courthouse occupied by the Courts during the progress of or in connection with judicial proceedings or grand jury proceedings, including proceedings before a Magistrate Judge, whether or not Court is actually in session, are prohibited. In addition, the airing of radio, television, or internet broadcasts by non-Court personnel of any proceedings being conducted virtually through an online platform are also prohibited.

L.R. 83.2(a)(1).

Moreover, Plaintiff's counsel has violated Rule 8.4(c) of the Tennessee Rules of Professional Conduct by "engag[ing] in conduct involving dishonesty, fraud, deceit, or misrepresentation."

An even larger issue, however, is that Plaintiff's counsel's use of Read AI has put untold amounts of confidential information into the AI "ether" with no protections on its use and

7

without the City's (or the Court's) permission. First, as mentioned above, Read AI is not a "feature of Teams" as Mr. Mendelson states, but rather a third-party add-in that is available at varying levels of integration and cost. *See* Read AI Pricing Webpage, https://www.read.ai/plans-pricing (last visited Jan. 13, 2026). To be clear, Read AI is not a simple voice-to-text transcription service, but rather ***generative*** AI.

According to its website, Read AI captures "User Content" (i.e., everything that is said or shared during the meeting, deposition, or hearing) and uses the information however Read AI sees fit. The Terms and Conditions make this crystal clear:

> **Use of User Content.** In order to provide the Services to you, we need certain rights to access, analyze, and use your User Content. For this purpose, you grant Read AI a nonexclusive, royalty-free, worldwide, fully paid, and sublicensable (through multiple tiers) license to use, reproduce, and analyze your User Content only for purposes of creating, providing, and improving our Services, without compensation to you or any third party. When you post or otherwise share User Content on or through our Services, you understand and agree that your User Content and any associated information (such as your username or profile photo) may be visible to others. You hereby irrevocably waive any "moral rights" or other rights with respect to attribution of authorship or integrity of materials regarding User Content that you may have under any applicable law or under any legal theory.

Read AI Terms of Service, at 3(b), https://www.read.ai/termsofservice (last updated Mar. 26, 2024).

In short, there is no way to know who now has access to the information Plaintiff's counsel has allowed to be used by a third-party AI software, over the City's express objections and in contravention to law and this Court's rules. And there is no way to know how AI is manipulating and using this information. Further, it is ironic that the same attorneys have sought to seal from the public docket mass amounts of information in the *Wells* case on the basis that the information should be kept confidential.

8

Plaintiff's Notice does not remedy the issue, and Plaintiff's counsel must acknowledge and atone for their continued misrepresentation regarding the recording of meetings, meet and confers, hearings, and depositions, and its misconduct with regard to the false disclosure to the Court.

## CONCLUSION

Plaintiff's counsel repeatedly flouts this Court's rules with impunity, and it must stop. The City, therefore, asks the Court to exercise its inherent authority to address Plaintiff's attorneys' behavior, particularly the attorneys admitted to this Court on a pro hac vice basis. Further, the City requests that the Court order Plaintiff to preserve all unauthorized recordings and any information given to or generated from an AI tool related to the *Wells*, *Young*, and *White* cases. Finally, the City respectfully requests the Court set a hearing to address this issue.

Dated: January 13, 2026

Respectfully submitted,

**BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, P.C.**

*s/ Bruce McMullen*
Bruce McMullen (#18126)
Jennie Vee Silk (#35319)
William G. Stevens (#42333)
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone (901) 526-2000
E-mail: bmcmullen@bakerdonelson.com
E-mail: jsilk@bakerdonelson.com
E-mail: wstevens@bakerdonelson.com
*Attorneys for Defendant City of Memphis*

9

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 13, 2026, a copy of the foregoing was served upon all counsel of record via the Court's e-filing system.

*s/ Bruce McMullen*
Bruce A. McMullen